📧 EFILED IN OFFICE
CLERK OF STATE COURT
RICHMOND COUNTY, GEORGIA
**2024RCSC00388**
ASHANTI L. POUNDS
APR 02, 2024 05:51 PM

Hattie Holmes Sullivan
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

# IN THE STATE COURT OF RICHMOND COUNTY
# STATE OF GEORGIA

| | |
|---|---|
| **CHALANI LUKE**, a minor, by and through her father and legal guardian **REGINALD LUKE, JR.**, as surviving daughter of **CHELSEA STANFORD**, Deceased, | * * * * * |
| Plaintiff | Civil Action No.: |
| v. | * |
| **WILLIAM E. LAVIGNE, M.D.** | * |
| Defendant. | * |

## COMPLAINT

COME NOW the Plaintiffs, Chalani Luke, a minor, by and through her father and legal guardian, Reginald Luke, Jr., as surviving daughter of Chelsea Stanford, deceased, by and through their attorneys, John D. Steel and John Steel Law and Zev T. Gershon, M.D., J.D. (pro have vice application to be filed), Shannon A. Slater (pro hac vice application to be filed), and Gershon, Willoughby & Getz, L.L.C, and file this Complaint against Defendant William E. Lavigne, M.D., and show to the Court the following:

## PARTIES

1. Reginald Luke, Jr. is a citizen and resident of Rayle, Georgia, and is the natural parent of Chalani Luke, a minor child, who was born on April 12, 2022. Chalani Luke is the natural born daughter of Chelsea Stanford, deceased. Chalani Luke is also a citizen and resident of Rayle, Georgia.

**EXHIBIT 1**

2. Defendant William E. Lavigne, M.D. (hereinafter also referred to as "Dr. Lavigne"), was at all relevant times licensed to practice medicine and engaged in the practice of medicine in the State of Georgia in the field of obstetrics and gynecology, and is a resident of Richmond County, Georgia. Defendant, Dr. Lavigne, held himself out to Chelsea Stanford, in particular, and to the public in general, as being an able and skilled physician possessing the same or higher level of care and skill required by the medical profession generally under like and similar circumstances and that he was well able to render proper and adequate obstetrical care and treatment to Chelsea Stanford, deceased, at all times. Said Defendant is subject to the jurisdiction and venue of this Court. Upon information and belief, Dr. Lavigne can be served at 2100 Central Avenue, Suite 2b, Augusta, Georgia 30904.

3. Personal and subject matter jurisdiction exist in this Court over the parties to this action and to the claims pled.

4. At all times relevant a health care provider/patient relationship existed between Defendant Dr. Lavigne and his patient Chelsea Stanford.

## STATEMENT OF FACTS

5. Chelsea Stanford became pregnant for the first time in late 2021. Her estimated date of delivery was July 4, 2022.

6. Ms. Stanford, 20 years old, received regular prenatal care and her pregnancy was generally uneventful, with a history of obesity and frequent bouts of nausea and vomiting.

7. Upon information and belief, Ms. Stanford's hemoglobin level was checked at the Doctor's Hospital of Augusta on January 24, 2022 and found to be 14.0 g/dL. Her

**EXHIBIT 1**

hemoglobin level was checked again on February 8, 2022 at Medical Associates Plus and found to be 11.3 g/dL.

8. On April 6, 2022, at 27 weeks gestation, Ms. Stanford was transported to Piedmont Augusta Hospital (formerly University Hospital) via ambulance with complaints of severe nausea and vomiting. She was admitted to the emergency department.

9. Her hemoglobin level on April 7, 2022 was found to be alarmingly low at 8.0 g/dL. Her potassium level was also severely low at 21 mmol/L.

10. Ms. Stanford was given medication to improve her potassium levels; however, no treatment was given in regard to her low hemoglobin level, nor was a plan made in terms of how the labor would progress should Ms. Stanford's hemoglobin continue to remain low.

11. On April 7, 2022, Dr. Lavigne advised Ms. Stanford of her severely low potassium levels, placed her on a high-potassium diet, and prescribed at-home medication to improve her potassium levels. At no point did Dr. Lavigne counsel Ms. Stanford about her low hemoglobin level.

12. On April 7, 2022, Dr. Lavigne felt that Ms. Stanford should not be discharged due to her severely low potassium levels alone. Nevertheless, Ms. Stanford was discharged with Dr. Lavigne's permission at approximately 5:42 p.m. that evening. Again, nothing was done to address her alarmingly low hemoglobin level.

13. On April 11, 2022, at 28 weeks gestation, Ms. Stanford was taken to the Doctor's Hospital of Augusta via ambulance for weakness, shortness of breath, chest tightness, and hyperemesis. Ms. Stanford's hemoglobin at the time of arrival on April 11, 2022 was 6.5 g/dL. Ms. Stanford's condition quickly declined, and she was transferred to the intensive care

**EXHIBIT 1**

unit (ICU). While in the ICU, Ms. Stanford required intubation due to episodes of bradycardia and tachypnea.

14. On April 12 at 12:13 p.m., Ms. Stanford suffered a cardiac arrest. Resuscitative measures were performed and return of spontaneous circulation was achieved at 12:15 p.m. At that time, the decision was made to perform an emergent Cesarean section for fetal distress as well as to promote maternal wellbeing. At 12:15 p.m., the emergency C-section was performed, along with massive transfusion with packed red blood cells. Baby Chalani was born at 12:24 p.m.

15. At 5:37 p.m., Ms. Stanford was taken back to the operating room for a total hysterectomy in attempt to stop severe blood loss. Ms. Stanford went into pulseless electrical activity arrest at 7:03 p.m. while in the operating room. Resuscitative measures were performed but aborted after approximately 26 minutes of aggressive CPR.

16. Ms. Stanford was pronounced dead 7:29 p.m. on April 12, 2022.

17. The standard of care for a physician, such as Dr. Lavigne, under the same or similar circumstances is to understand the risk factors Ms. Stanford had for hemorrhagic shock due to her low hemoglobin level on April 7, 2022, and to appreciate the risk that this diagnosis poses significant risk for maternal morbidity, cardiac arrest and multisystem organ failure. Dr. Lavigne should have recognized the severity of a hemoglobin level of 8.0 g/dL and made the decision to 1) transfuse the patient with blood products to increase her hemoglobin level to normal range on April 7, 2022; 2) consult with a hematologist to create a plan of care for Ms. Stanford; 3) to closely monitor Ms. Stanford's hemoglobin levels for the remainder of her pregnancy; and 4) to prescribe steroids to help with development of baby Chalani's lungs in the event that early delivery is required.

**EXHIBIT 1**

18. The standard of care for a physician, such as Dr. Lavigne, under the same or similar circumstances is to also immediately recognize the severity of a low hemoglobin level at 26 weeks gestation, and to discuss the severity of the situation with Ms. Stanford so that she could reasonably understand the risks associated with leaving the hospital on April 7, 2022. Dr. Lavigne should have recognized that no reasonable patient would have insisted on leaving the hospital if they were given an adequate understanding of the risks associated with a severely low hemoglobin level. Instead, Dr. Lavigne only discussed Ms. Stanford's low potassium levels and, despite acknowledging that such levels were also concerning, Dr. Lavigne ultimately allowed his patient to be discharged rather than requiring her to leave against medical advice.

19. Chelsea Stanford died as a direct and proximate result of Defendant's negligence, as alleged herein in this Complaint.

20. Had the Defendant adhered to the applicable standards of care, Chelsea Stanford's condition would have been appreciated and appropriate and timely measures would have been taken thereby avoiding her death.

21. Defendant Dr. Lavigne owed Plaintiff's decedent Chelsea Stanford a duty to exercise that degree of skill and care which like health care providers would have exercised in meeting the standard of care under the same or similar circumstances.

**BREACHES OF THE STANDARD OF CARE**

22. Plaintiffs adopt the averments contained in paragraphs 1 through 21 and adopt the same as if fully set out herein.

23. Defendant William E. Lavigne, M.D. was negligent in the provision of care to Chelsea Stanford, which similarly situated physicians exercising reasonable, care, skill

**EXHIBIT 1**

and diligence in the same general line of practice would ordinarily have and exercise in like cases. Dr. Lavigne breached the standard of care by the following actions:

    A.    Failing to appropriately manage Ms. Stanford's prenatal condition and her fetal condition on April 7, 2022;

    B.    Failing to adequately and appropriately follow-up on Ms. Stanford's low hemoglobin level on April 7, 2022;

    C.    Failing to recognize and appreciate the seriousness of the finding of a hemoglobin level of 8.0 g/dL on April 7, 2022;

    D.    Failing to adequately counsel his patient about the finding of an alarmingly low hemoglobin level on April 7, 2022;

    E.    Failing to administer blood products to Ms. Stanford on April 7, 2022 and/or request a hematology consult to create a plan of treatment;

    F.    Failing to properly manage Ms. Stanford's condition so as to prevent complications and maternal death; and

    G.    Failing in other ways to properly manage and care for Chelsea Stanford.

## **PROXIMATE CAUSE & DAMAGES**

24.    Plaintiff adopts the averments contained in paragraphs 1 through 23 and re-aver the same as if fully set out herein.

25.    As a direct and proximate result of the negligence of the Defendant, Chelsea Stanford suffered injuries and ultimately died. Ms. Stanford's death would have been prevented with appropriate care.

26.    The negligence of the Defendant combined caused the injuries to and death of Chelsea Stanford.

**EXHIBIT 1**

27. Chelsea Stanford would have had a normal life expectancy if she had been afforded proper medical care and treatment.

28. As a result of Defendant's breaches and negligent acts or omissions, Plaintiffs are entitled to an award of damages, in substantial amounts to be proven at trial herein.

29. Chalani Luke, a minor, as the natural daughter of Chelsea Stanford, by and through her natural father Reginald Luke, Jr., brings this action in that capacity for Chelsea Stanford's wrongful death and to recover the full value of her life as provided by law, general and special damages, including all damages alleged herein and which are otherwise allowed by law, which resulted from the negligence of the Defendant.

30. Attached hereto as Exhibit A is the Affidavit of Sarah Poggi, M.D., in accordance with O.C.G.A., § 9-11-9.1.

WHEREFORE, the Plaintiffs respectfully pray that this Court:

(1) Cause process to issue and to be perfected as provided by law;

(2) Allow Plaintiffs a trial by jury; and

(3) Enter judgment in favor of Plaintiffs against Defendants in an amount in excess of $10,000 for the injuries and damages set forth above, and for the costs of this action.

Respectfully submitted,

**JOHN STEEL LAW**

By: */s/ John D. Steel*
John D. Steel
Georgia Bar No. 677646
The Fountains at Piedmont Center
3495 Piedmont Road, N.E. Building 11 – Suite 905
Atlanta, Georgia 30305
Phone: (404) 264-1292
Email: jsteel@steel-moss.com

**EXHIBIT 1**

-And-

Zev T. Gershon, M.D., J.D
ztg@askthelawdoc.com
Shannon A. Slater, Esquire
sas@askthelawdoc.com
(*Pro Hac Vice* Applications To Be Filed)
Gershon, Willoughby & Getz, LLC
25 Hooks Lane, Suite 216
Baltimore, Maryland 21208
443-394-8800
Fax 443-394-2673

*Attorneys for Plaintiffs*

**EXHIBIT 1**

# AFFIDAVIT OF SARAH H. POGGI, M.D.

**EXHIBIT 1**

WASHINGTON,
DISTRICT OF COLUMBIA

## AFFIDAVIT OF SARAH H. POGGI, M.D.

Personally appeared before the undersigned officer, duly authorized to administer oaths, Sarah H. Poggi, M.D., who, being duly sworn, deposes and states as follows:

1.

My name is Sarah H. Poggi, M.D. I am a currently a licensed physician in the Commonwealth of Virginia, the District of Columbia and the State of Maryland, and was previously licensed in the State of California. I have been in continuous practice for 27 years and I specialize in obstetrics and gynecology, and am board certified in both obstetrics and gynecology and obstetrics and gynecology: maternal fetal medicine subspecialty. I am qualified to attest to standards of care for prenatal care and labor management by obstetricians. I have regularly delivered babies until 2015, when my husband's poor health due to quadriplegia precluded overnight in-hospital call, but have continued to manage obstetric patients presenting with medical complications during pregnancy in a consultative role. I work closely with general obstetricians-gynecologists and am familiar with the standard of care for such providers. In my practice, I have managed and cared for patients who have presented with and been treated for symptoms and conditions the same or similar to those exhibited by Chelsea Stanford in April 2022. I have experience managing pregnant patients with pregnancies complicated by decreasing hemoglobin levels and new onset of anemia, nausea and vomiting during pregnancy and electrolyte abnormalities and know that such patients require thorough evaluation and a calculated plan of care. Through my medical practice and profession, I have actual professional knowledge and experience in the area of practice and the specialty in which I give opinions in this case. I have been regularly engaged in the practice of obstetrics and gynecology and the care and treatment of patients such as Chelsea Stanford and the delivery of her child Chalani Luke for the five years (and more) prior to April 2022, with sufficient frequency to have an appropriate level of knowledge regarding the care and treatment of patients in the same or similar condition of Ms. Stanford and her baby in April 2022. Enclosed please find my Curriculum Vitae, which is incorporated herein by reference.

2.

I give this affidavit based upon personal knowledge obtained through my education, training and experience, and upon my review of the medical records of Chelsea Stanford, including the records of treatment at Medical Associates Plus, Piedmont Augusta Hospital (formerly University Hospital), the Doctor's Hospital of Augusta, the Autopsy Report, and the Death Certificate, which have been provided to me.

3.

Through education, training, and experience, I am familiar with the standards of care applicable to physicians who care for and treat patients under like conditions and similar

**EXHIBIT 1**

circumstances as Ms. Stanford as shown by the medical records that I reviewed. Specifically, I am familiar with the standards of care applicable to the treatment, care and medical management provided by physicians to patients like Ms. Stanford with respect to her pregnancy. As of the time of the acts and omissions discussed herein about which I am offering opinions I was licensed to practice medicine in Virginia, Maryland and the District of Columbia and had and have actual professional knowledge and experience in the area of medical practice and specialty involved and I have been and am regularly engaged in the active practice of the specialty discussed in my opinions for over three of the five years (five out of five) at the time of the acts and omissions discussed herein with sufficient frequency to establish an appropriate level of knowledge in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

4.

I have assumed for the purposes of this affidavit that the above-described records accurately reflect the course of care and treatment received by Ms. Stanford and that the facts therein are reported correctly. The following facts appear in and from the records and are noted only in that they provide an overview of the care and treatment rendered and they are not intended to be entirely comprehensive, nor do they recite the entirety of the records.

5.

Chelsea Stanford was a 20-year-old G1P0 female with an estimated delivery date of 07/4/22. Obstetricians Lisa Jackson, M.D. and William Lavigne, MD, provided her prenatal care and operative delivery. Her prenatal course was generally uneventful, with a history of obesity and frequent bouts of nausea and vomiting.

On 01/24/22, Ms. Chelsea Stanford was seen by Dr. Lisa Jackson for confirmation of pregnancy. She thought she was about 16 ½ weeks gestation based upon her last menstrual period. She was found to have a urinary tract infection that was promptly treated with antibiotics. Her hemoglobin on this date was 14.0 g/dL.

On 02/08/22, Ms. Chelsea Stanford was seen by Dr. Lisa Jackson for a routine OB visit at 19 weeks and 1 day gestation. The visit was uneventful, with adequate fetal movements present, and no symptoms of vaginal bleeding or contractions. Her hemoglobin on this date was 11.2 g/dL.

On 04/06/22, Ms. Stanford was taken via EMS to the emergency department at Piedmont Augusta Hospital at 27 weeks and 4 days gestation. She was complaining of severe nausea and vomiting and was admitted to the emergency department. She was treated by Dr. Lavigne during her hospital stay. Her hemoglobin level was found to be alarmingly low at 8.0 g/dL. She also had a severely low potassium level of 2.1 mmol/L. She was given antiemetic therapy and started on IV fluids. She was also given medication to treat her low potassium levels, but this was suboptimal and they did not correct sufficiently enough to warrant outpatient management. On 04/07/22, Ms. Stanford became irritable about her IV having blown that morning. She did not wish to have another IV started and therefore did not receive any further IV fluids. Dr. Lavigne

EXHIBIT 1

counseled Ms. Stanford that she should not leave the hospital due to her low potassium levels. Ms. Stanford insisted that she wanted to go home, and Dr. Lavigne eventually agreed to consent to her discharge with an agreement that she follow a potassium-rich diet. At no point did Dr. Lavigne address, treat, or counsel Ms. Stanford about her severely low hemoglobin level on 04/07/22.

On 04/11/22, just 4 days later and at 28 weeks gestation, Ms. Stanford was taken via EMS to the emergency department at Doctor's Hospital of Augusta. She was complaining of shortness of breath, chest tightness, hyperemesis, and general weakness. Upon arrival, her hemoglobin level was found to be 6.5 g/dL. Ms. Stanford's condition rapidly declined, requiring intubation and transfer to ICU. On 04/12/22, the OB team was preparing for possible peri mortem delivery of Ms. Stanford's baby when Ms. Stanford suffered her first cardiac arrest at 12:13 p.m. She was quickly resuscitated and an emergency C-section along with massive transfusion of packed red blood cells was performed at 12:15 p.m. The baby was delivered at 12:24 p.m.

Ms. Stanford suffered three more arrests requiring resuscitative measures following the delivery of her baby. At 5:37 p.m. on 4/12/22, she was taken back to the OR to find the source of the major blood loss and likely perform a total hysterectomy. At 7:03 p.m., Ms. Stanford went into pulseless electrical activity while on the operating table. Resuscitative measures were performed for approximately 26 minutes before Ms. Stanford was sadly pronounced dead at 7:29 p.m.

Dr. Lavigne's hospital note on 04/07/22 demonstrates that Ms. Stanford was experiencing concerning complications with her pregnancy. Dr. Lavigne counseled Ms. Stanford about her low potassium levels as well as some of the side effects and symptoms of such a problem. He expressed to her that he did not want her to leave the hospital at that time. Dr. Lavigne did not, at any point in time on April 6 or 7, make Ms. Stanford aware that she had a low hemoglobin level, nor what it might mean in the setting of her clinical symptoms of nausea and vomiting long past the first trimester associated with severe electrolyte abnormalities, including a dangerously low potassium level that was in no way amenable to dietary correction, nor did he counsel her on what the constellation of new onset, severe anemia and severe hypokalemia could indicate with intractable vomiting, nor the risks of leaving the hospital at that time, or how severe such a situation is. Dr. Lavigne should have recognized that no reasonable patient would have insisted on leaving the hospital if they were given an adequate understanding of the risks associated with a severely low hemoglobin level presenting in concert with the other life-threatening finding of severe hypokalemia and intractable vomiting.

6.

Ms. Stanford had multiple concerning signs and symptoms during her pregnancy, and based upon the medical records I have reviewed, Dr. Lavigne blatantly ignored not only the life-threatening risk of low hemoglobin level, but also minimized Ms. Stanford's other problems on 04/07/22. This was manifest by a total failure to mention or treat Ms. Stanford's low hemoglobin level, failure to counsel her on the meaning and risks of this finding, and agreement to discharge Ms. Stanford despite her knowingly worrisome potassium levels. Dr. Lavigne made

**EXHIBIT 1**

no meaningful efforts to diagnose the cause of Mrs. Stanford's severe, new onset anemia occurring in combination with her vomiting and severe hypokalemia. In addition, he made no attempt to treat the severe anemia to avoid the morbid consequences of continually decreasing hemoglobin levels. The following paragraphs will describe in more detail the deficiencies in obstetrical care that Ms. Stanford received.

During Ms. Stanford's visits with Dr. Jackson, she had hemoglobin levels that fell within normal limits. However, her hemoglobin level on 02/08/22, the last documented hemoglobin level before the 04/06/22 hospital admission, was 11.2 g/dL. A hemoglobin a 11.2 g/dL can, and often is, described as being slightly anemic. Ms. Stanford's records show a clear pattern of decreasing hemoglobin with documented levels ranging from 14.0 g/dL, 11.2 g/dL, and 8.0 g/dL, in chronological order. Dr. Lavigne should have recognized this pattern and aggressively treated the deteriorating hemoglobin. Additionally, even if the previously records were not available to Dr. Lavigne to allow him to recognize this pattern, a hemoglobin of 8.0 g/dL in and of itself requires evaluation and treatment and would never allow for a physician's approval to be discharged and sent home.

Dr. Lavigne managed the prenatal care of Ms. Stanford on 04/07/22 as if the only concern was low potassium levels. Even then, he minimized this concern, as the values were much too low to allow for dietary correction in a patient with intractable vomiting and signed off on his patient's discharge. In doing so, he allowed Ms. Stanford to leave the hospital without any awareness of how serious her condition was and did not give her the opportunity to make an educated decision about her and her baby's care.

Dr. Lavigne fell below the standard of care on 04/07/22 for the following reasons:

1. He did not develop a differential diagnosis for Mrs. Stanford's rapidly evolving anemia occurring in the setting of ongoing intractable vomiting and severe hypokalemia Anemia in, or out, of pregnancy can have many causes, whose treatments may vary.

2. He did not consult with a hematologist or maternal fetal medicine physician to evaluate and create a plan of care for Ms. Stanford.

3. He did not closely monitor Ms. Stanford's hemoglobin levels for the remainder of her pregnancy.

4. He did not prescribe steroids to help with development of the baby's lungs in the e vent that early delivered was required.

5. He did not discuss the severity of the situation with Ms. Stanford so that she could reasonably understand the risks associated with leaving the hospital.

Clearly, Dr. Lavigne failed to meet the standards of care for the above obstetrical complications. These failures directly lead to the death of Ms. Stanford. A physician with Dr. Lavigne's years of experience should recognize the severity of an 8.0 g/dL hemoglobin level immediately. If Dr. Lavigne had either developed a differential diagnosis for Ms. Stanford's

**EXHIBIT 1**

unusual presentation of severe anemia in the setting of months of intractable vomiting and severe hypokalemia or called on others to assist him in doing so ( eg specialists in hematology and/or maternal fetal medicine on 04/07/22, these actions alone would have greatly reduced the risk of Ms. Stanford's death.

7.

In my opinion, Dr. Lavigne did not provide appropriate care to Ms. Stanford and her baby on 04/07/22. Ms. Stanford had life-threatening symptoms and complications that Dr. Lavigne basically ignored. A reasonably prudent obstetrician following well-set standards of care would have accurately treated the severely low hemoglobin level and severe hypokalemia and provided appropriate standards of care for Ms. Stanford. Dr. Lavigne's failure to meet these applicable standards of care directly led to and caused her death, which within reasonable medical probability would have been avoided. His failures constitute medical negligence.

8.

I reserve the right to modify these opinions when new facts are brought into evidence. My opinions contained in this report are based upon the information provided to me and based upon reasonable medical probability. If this case proceeds further, and new information is received, I reserve the right to modify my affidavit. I will be available for deposition and trial, should that become necessary.

9.

This affidavit sets forth some of my opinions regarding departures from the standards of care in this case. This affidavit is being provided to comply with the requirements of O.C.G.A. § 9-11-9.1 and as such sets forth at least one departure from the standard of care in the treatment of Ms. Stanford. It is not intended to be a summary of all of the opinions that I may have in this matter.

This 13 day of March, 2024.

_____
Sarah H. Poggi, M.D.

Sworn to and subscribed before me
this 13 day of March, 2024.

5

**EXHIBIT 1**

_____
Notary Public

My Commission expires: 7/31/24



**EXHIBIT 1**